UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **DLSH PROPERTIES, INC.**, <br><br> Plaintiff, <br><br> v. <br><br> **SAMSUNG FIRE & MARINE INSURANCE CO., LTD., et al.**, <br><br> Defendants. | 2:19-cv-11227 <br><br> HON. TERRENCE G. BERG <br><br> **ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS, MOTION FOR SUMMARY JUDGMENT** |

This is a dispute about insurance coverage. Tranor Industries, LLC, ("Tranor") leased a building and parking lot from Plaintiff DLSH Properties, Inc. ("DLSH") in Detroit, Michigan. Tranor was responsible for insuring that property consistent with the lease terms. In 2017, Tranor discovered damage to the building's concrete floor. The company sought remuneration under commercial insurance policies it had purchased from Defendants Samsung Fire & Marine Insurance Co., Ltd., ("Samsung") and Hartford Fire Insurance Company ("Hartford"). Both companies denied coverage. Tranor subsequently assigned its rights to all insurance claims arising out of the damaged property to DLSH, which later discovered additional damage to the leased property. Defendants also denied coverage for that damage. DLSH filed this lawsuit in an effort to compel Samsung and Hartford to pay its insurance claims.

1

The case is now before the Court on a Rule 12(c) motion for judgment on the pleadings filed by Samsung, and a Rule 56 motion for summary judgment by Hartford. *See* ECF Nos. 15, 24; Fed. R. Civ. P. 12(c); Fed. R. Civ. P. 56. Because the plain language of both Samsung's and Hartford's commercial insurance policies precludes coverage for the type of damage or loss DLSH is claiming, the Court will grant both motions and enter judgment in favor of Samsung and Hartford.

## BACKGROUND

Tranor and DLSH, Tranor's assignee, entered into a commercial lease agreement for the land and building located at 19460 Mt. Elliot, in Detroit, Michigan. ECF No. 1-2, PageID.7 (Compl.). As required by the lease agreement, Tranor purchased a commercial insurance policy from Samsung to insure DLSH's property. ECF No. 1-2, PageID.7. The duration of that policy, Commercial Package Policy No. CPP 0064334 02, spanned from December 1, 2015 through December 1, 2016. *Id*. When the Samsung policy was about to expire Tranor purchased a different commercial insurance policy from Hartford, Policy No. 35 UUN BJ8428 K3. ECF No. 24-2, PageID.598. That policy had a term extending from December 1, 2016 through December 1, 2018. *See* ECF No. 1-2, PageID.8. DLSH asserts that both the Samsung policy and the Hartford policy provided coverage for physical damage to the Mt. Elliot property. ECF No. 1-2, PageID.8.

2

In May 2017, Tranor learned that the concrete floor of the insured property had "heaved and cracked, rendering it both unusable and unsafe in light of the day-to-day activities and operations being conducted by Tranor." ECF No. 1-2, PageID.8. Tranor sought coverage for this damage from both Samsung and Hartford. *Id.* But each company denied it was obligated to compensate DLSH under the terms of its insurance policy. *Id.* On February 2, 2019, Tranor assigned its rights to any insurance claims against Samsung and Hartford arising out of the property damage to DLSH. Since that assignment, DLSH says it has discovered additional damage to the leased property including "crushed floor and parking areas both inside and outside of the structure, crushed drain tiles both inside and outside the structure, and damage to multiple structural beams that have been knocked off their foundations." ECF No. 1-2, PageID.8.

Plaintiff filed this lawsuit in Wayne County Circuit Court seeking a declaratory judgment that both Samsung and Hartford are obligated to reimburse DLSH for the full value of damage to the property's concrete floor and parking lot. DLSH also asserted a claim for breach of contract under Michigan law. Hartford subsequently removed the case to federal court based on diversity jurisdiction. *See* ECF No. 1. Before the Court is Samsung's motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, and Hartford's motion for summary judgment under Rule 56. Having carefully considered the parties'

arguments, the Court will grant both motions and enter judgment in favor of the Defendants.

## LEGAL STANDARD

Courts apply the same standard to a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure as they do in assessing a motion to dismiss under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6), 12(c). *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011). In deciding either of these motions courts "must construe the complaint in the light most favorable to the plaintiff, accept all well-pled factual allegations as true and determine whether the plaintiff undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)). Consideration of a motion to dismiss under Rule 12(b)(6) or Rule 12(c) is generally confined to the pleadings. *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Courts may, however, consider any exhibits attached to the complaint or the defendant's motion to dismiss "so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). The exhibits attached by the parties in this case satisfy those parameters.

Summary judgment under Rule 56, in turn, is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In deciding a motion for summary judgment, the Court must view the evidence and any reasonable inferences drawn from the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001). The mere existence of *some* alleged factual dispute between the parties is insufficient to defeat an otherwise properly supported motion for summary judgment; "the requirement is that there must be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in original).

## DISCUSSION

The plain language of both Samsung's and Hartford's insurance policies establishes that Defendants do not owe DLSH coverage for claimed damage to the Mt. Elliot property. Neither of the policies provide coverage for damage to the premises' building or parking lot. The Court will accordingly grant Samsung's motion for judgment on the pleadings, and Hartford's motion for summary judgment.

Contract interpretation is a question of law to be determined by the courts. *Busch v. Holmes*, 662 N.W.2d 64, 67 (Mich. Ct. App. 2003) (citing

5

*Auto Club Ins. Ass'n v. Lozanis*, 546 N.W.2d 648 (Mich. 1996)). Courts must enforce insurance contracts in accordance with their terms and "must not hold an insurance company liable for a risk that it did not assume." *Citizens Ins. Co. v. Pro-Seal Serv. Group, Inc.*, 730 N.W.2d 682, 685–86 (Mich. 2007). Under Michigan law,[1] courts interpret insurance policies applying principles of ordinary contract interpretation. *Farm Bureau Mut. Ins. Co. of Mich. v. Nikkel*, 596 N.W.2d 915, 919 (Mich. 1999). Those principles require the Court "to look at the policy as a whole, and to give meaning to all of its terms." *Advance Watch Co., Ltd. v. Kemper Nat'l Ins. Co.*, 99 F.3d 795, 799 (6th Cir. 1996) (citing *Fresard v. Mich. Millers Mut. Ins. Co.*, 327 N.W.2d 286, 289 (Mich. 1982)). Additionally, if a contract provision is clear and unambiguous it must be interpreted in its "plain, ordinary, and popular sense" and enforced as written. *Equitable Life Assurance Soc'y v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998). Courts should not create ambiguity in an insurance policy where its terms are clear. *Citizens Ins. Co.*, 730 N.W.2d at 868.

### A. The Samsung Policy

Unfortunately for DLSH, the unambiguous language of the Samsung commercial insurance policy does not provide coverage for damage to the 19460 Mt. Elliot premises. The policy limits coverage for

---

[1] Because subject-matter jurisdiction in this case is premised solely on diversity, the Court applies Michigan law. *Tooling, Mfg. and Techs. Ass'n v. Hartford Fire Ins. Co.*, 693 F.3d 665, 670 (6th Cir. 2012).

that specific location to "Personal Property," which does not include the type of damage DLSH seeks compensation for. *See* ECF No. 5-1, PageID.59 (Samsung Ins. Policy). In contrast, two other buildings covered by the policy received "Building" coverage that would likely have encompassed DLSH's claimed losses had they occurred at those properties. ECF No. 5-1, PageID.59.

The Samsung policy covers three locations, including the 19460 Mt. Elliot property (identified as "Prem # 3" in the Declarations). ECF No. 5-1, PageID.67. The section labelled "Commercial Property Description of Coverages Provided" delineates the type of coverage provided for each of the three covered premises. ECF No. 5-1, PageID.59. Critically, the only limit of insurance provided in the policy's Declarations for the Mt. Elliot property, identified as Prem No. 00003 in the Declaration below, is a $100,000 limit of insurance for "Personal Property." ECF No. 5-1, PageID.59. In contrast, the policy lists separate limits of insurance for "Building" in connection with the two other premises covered by the policy, indicating that those properties received "Building" coverage under the policy while the Mt. Elliot property did not. ECF No. 1, PageID.59. The relevant portion of the policy provides:

## COMMERCIAL PROPERTY
### DESCRIPTION OF COVERAGES PROVIDED

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Blanket Coverage | Covered Causes of Loss | Coinsurance† | Ded. |
|---|---|---|---|---|---|---|---|
| 00001 | 00001 | Building | | Yes GRP1 | SPECIAL | 100 | 5,000 |
| 00001 | 00001 | Business Income With Extra Expense | 2,000,000 | | SPECIAL | 100 | 24 HRS |
| 00001 | 00001 | Equipment Breakdown | 17,764,640 | | | | 5,000 |
| 00001 | 00001 | Personal Property | 7,682,000 | | SPECIAL | 100 | 5,000 |
| 00001 | 00001 | Premier Broadening Endorsement | | | | | |
| 00002 | 00001 | Building | | Yes GRP1 | SPECIAL | 100 | 5,000 |
| 00002 | 00001 | Equipment Breakdown | 790,581 | | | | 5,000 |
| 00002 | 00001 | Premier Broadening Endorsement | | | | | |
| 00003 | 00001 | Personal Property | 100,000 | | SPECIAL | 100 | 5,000 |

ECF No. 5-1, PageID.59.

The provisions of the Samsung insurance policy outlining "Building" coverage as well as other relevant forms of coverage are replicated below:

### A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

#### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.**, and limited in **A.2.** Property Not Covered, *if a Limit of Insurance is shown in the Declarations for that type of property*.

**a. Building**, meaning the building or structure described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery; and

(b) Equipment;

(4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

(a) Fire-extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(5) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the building or structure;

(b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:

. . .

**c. Personal Property Of Others**

. . .

**2. Property Not Covered**

Covered Property does not include:

. . .

**d.** Bridges, roadways, walks, patios or other paved surfaces

ECF No. 5-1, PageID.137–38 (emphasis added).

From the plain language of the policy it appears that damage to the concrete floors, parking areas, drain tiles, and structural beams DLSH seeks coverage for would fall under the "Building" subheading of "Covered Property" had Tranor elected to purchase "Building" coverage for the Mt. Elliot property. *See* ECF No. 5-1, PageID.137. The Declarations section, however, illustrates that Tranor only purchased "Personal Property" coverage for the that property, despite purchasing "Building" coverage for the other two premises covered by the Samsung policy. *See id.*

DLSH's claimed damage plainly does not fall under the "Business Personal Property" or "Personal Property of Others" subheadings to "Covered Property." *See* ECF No. 5-1, PageID.137–38. The policy defines those types of "Personal Property" to mean items such as furniture, fixtures, machinery, and equipment. *See id.* Because DLSH and Tranor purchased only "Personal Property" coverage for the Mt. Elliot property,

10

and not "Building" coverage, Samsung is not required to compensate DLSH for the building-related damages.

The Court further observes that the parties have not briefed the question of whether the Samsung policy, which had a duration of December 1, 2015 through December 1, 2016, covers damage that Tranor and DLSH did not discover until May 2017 or thereafter. Likewise, the parties have not addressed the question of whether the more recently discovered damage to the Mt. Elliot property (the crushed floor, parking areas, and drain tiles inside and outside of the structure) could fall within the exclusion that bars "Building" coverage for "[b]ridges, roadways, walks, patios or other paved surfaces." ECF No. 5-1, PageID.137–38. The Court, however, need not address any additional coverage questions because it finds that Tranor and DLSH clearly did not have "Building" coverage for the Mt. Elliot property—only "Personal Property" coverage. The claimed damages pertain to a "Building," not to "Personal Property."

Additionally, the Court is not swayed by DLSH's reference to portions of the Samsung policy that are examined out of context. Although seemingly compelling when read in isolation, the policy language cited by DLSH is inapposite when the policy is read as a whole, as the law requires. For example, DLSH relies on language from the "Business Auto Coverage Form," which does not provide coverage for damage to buildings. Under the insurance policy's unambiguous terms,

Samsung is not obligated to pay DLSH for its claimed damages to the Mt. Elliot property.

### B. The Hartford policy

Like the Samsung policy, the Hartford policy provides no coverage for the damage DLSH claims to have suffered. Although Tranor purchased "Building" coverage for five other properties insured under the Hartford policy, it bought only "Business Personal Property," "Legal Liability" and other inapplicable forms of coverage for the Mt. Elliot property. *See* ECF No. 24-2, PageID.621. The damage to a building and parking lot DLSH now seeks remuneration for falls outside the scope of insurance Tranor purchased. Because the material facts are undisputed and the plain language of the policy bars coverage for DLSH's claims, the Court will grant summary judgment in favor of Hartford.

Although Tranor bought "Building" coverage from Hartford for some of its insured premises, the limits of insurance indicate Tranor opted to purchase only "Business Personal Property," "Legal Liability," and other non-building forms of coverage for the Mt. Eliot property (referred "Premises No. 3." ECF No. 24-2, PageID.621. See coverage descriptions and limits of insurance reproduced below:

```
PREMISES NO.   3

ADDRESS:

  19460 MOUNT ELLIOTT ST
  DETROIT, MI   48234
  WAYNE   COUNTY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
DESCRIPTION OF COVERAGE OR PROPERTY           LIMIT OF INSURANCE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BUSINESS PERSONAL PROPERTY (INCLUDING STOCK):     INCLUDED IN BLANKET
                                                  BUILDING AND BUSINESS
                                                  PERSONAL PROPERTY LIMIT


LEGAL LIABILITY - BUILDING LIMIT OF INSURANCE:        $975,000
                                                  IN ANY ONE ACCIDENT


  PREMISES    3    CONTINUED


POLLUTANT AND CONTAMINANTS CLEAN UP:                  $250,000

PROTECTIVE SYSTEMS - FIRE APPLIES TO THIS PREMISES FOR:
  AUTOMATIC FIRE EXTINGUISHING SYSTEM
```

ECF No. 24-2, PageID.621–22.

The "Coverage" section of Hartford's property coverage policy explains what types of damage fall under "Building" coverage, "Business Personal Property" coverage, and other provisions of the policy:

**A. Coverage**

> We will pay for direct physical loss of or direct physical damage to the following types of Covered Property caused by or resulting from a Covered Cause of Loss. *Covered Property*, as used in this Coverage Part, means the type of *property described in this section, **A.1.** Covered Property for which a Limit of Insurance and a premises address is shown* in the Property Choice – Schedule of Premises and Coverage.

> **1. Covered Property**

**a. Building** means buildings or structures that:

    **(1)**    You own; or

    **(2)**    Are responsible for insuring.

Building also includes:

    **(1)**    Buildings or structures in the course of construction;

    **(2)**    Alterations, repairs or additions to the building;

    **(3)**    Foundations;

    **(4)**    Underground pipes, flues or drains necessary for the service of the building;

. . .

    **(17)**    Walks, roadways, patios or other paved surfaces at a "Scheduled Premises."

. . .

**b. Business Personal Property**

    **(1)**    Business Personal Property means:
        (a) All of Your Business Personal Property owned by your business; and

        (b) Business Personal Property owned by others, that is in your care, custody or control (including leased property as provided in a written lease agreement);

    **(2)**    Business Personal Property also includes:

        (a) Furniture, fixtures, machinery and equipment;

        (b) "Stock"

        (c) "Computer equipment";

> (d) "Electronic Data" and "Valuable Papers";
>
> (e) Patterns, dies, molds, and forms;
>
> (f) Your interest in the labor, materials or services furnished or arranged by you on Business Personal Property you have installed or repaired;
>
> (g) "Tenant Improvements and Betterments";
>
> . . .
>
> **2. Property Not Covered**
>
> Covered Property does not include the following unless an endorsement is added to this Coverage Part:
>
> . . .
>
> m. Property that is more specifically covered, insured or described under another coverage form of this policy or any other policy, except for the excess of the amount due (whether you can collect on it or not) from that other insurance.

ECF No. 24-2, PageID.663–64.

Damage to the Mt. Elliot property's buildings, drains, and paved surfaces would likely fall under this "Building" coverage provision had Tranor opted to purchase "Building" insurance for the premises. But the undisputed facts illustrate that Tranor did not select this type of insurance for Premises No. 3. ECF No. 24-2, PageID.663. Under the clear language of the policy, there is accordingly no "Building" coverage for the Mt. Elliot property.

DLSH's claimed damages simply do not fit within any of the forms of coverage Tranor did purchase for the Mt. Elliot premises: "Business Personal Property"; "Legal Liability – Building Limit of Insurance"; "Pollutant and Contaminants Clean Up"; and "Protective Systems." Although DLSH asserts that its loss should be covered under the "Business Auto Coverage" portion of Hartford's policy because the damage was purportedly caused by forklifts, that section of the policy provides only liability coverage for property damage caused by covered "autos." *See* ECF No. 26, PageID.860; ECF No. 24-2, PageID.717 (explaining that "Business Auto Coverage" includes personal injury protection, medical expenses, uninsured motorist coverage, etc.). Although the "Business Auto Coverage" may provide some protection for physical damage, the policy clarifies that "physical damage" means damage to a covered "auto." *See* ECF No. 24-2, PageID.727. The "Business Auto Coverage" section of the policy is inapplicable to DLSH's claim for damage to the Mt. Elliot building and parking lot. Additionally, DLSH has not provided the Court with any reason to believe forklifts are covered under the "Business Auto Coverage" section, which expressly excludes liability coverage for damage caused by "mobile equipment." ECF No. 24-6, PageID.848 (Hartford Ins. Pol. Definitions).

The plain language of both Samsung's and Hartford's insurance policies precludes coverage for DLSH's claimed damages to the 19460 Mt. Elliot property. DLSH did not purchase "Building" coverage—the type of

coverage that likely would have encompassed damage to the building, floor, or parking lot—for the Mt. Elliot property from either Samsung or Hartford. Because the material facts are undisputed and the unambiguous text of both insurance policies bars coverage for DLSH's alleged injuries, DLSH cannot succeed on its claim for declaratory judgment (Count I) or breach of the insurance policies (Count II). The Court will enter judgment as a matter of law in favor of Defendants.

## CONCLUSION

For these reasons, the Court will **GRANT** the motion for judgment on the pleadings (ECF No. 15) filed by Defendant Samsung Fire & Marine Insurance Co., Ltd. The Court will likewise **GRANT** the motion for summary judgment (ECF No. 24) filed by Defendant Hartford Fire Insurance Company. Summary judgment will be entered in favor of Defendants.

**SO ORDERED.**

Dated: March 31, 2020          s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE